365 So.2d 834 (1978)
Mrs. Inez L. GREEN, Individually and in Behalf of Nathaniel Green, minor
v.
ORLEANS PARISH SCHOOL BOARD.
No. 8430.
Court of Appeal of Louisiana, Fourth Circuit.
October 9, 1978.
Rehearing Denied December 19, 1978.
Writ Refused February 9, 1979.
*835 Nelson, Nelson & Lombard, Ltd., John P. Nelson, Jr., Patrick D. McArdle, New Orleans, for plaintiff-appellant.
Polack, Rosenberg, Rittenberg & Endom, Franklin V. Endom, Jr. and Richard G. Verlander, Jr., New Orleans, for defendant-appellee.
Before LEMMON, GULOTTA and SCHOTT, JJ.
LEMMON, Judge.
This tort action, founded on teacher negligence, presents the claim of a 16-year old high school student who was permanently paralyzed by injuries sustained while performing a wrestling drill in a required physical education class conducted by a teacher employed by the Orleans Parish School Board. Plaintiff's claim was dismissed after a trial on the merits, and he has appealed.
Since the standard for evaluating a teacher's conduct is the care which a reasonable and prudent person would exercise under similar circumstances, the voluminous testimony presented with utmost legal skill by both sides primarily addressed the question of whether this teacher's method of conducting the class was so substandard as to create an unreasonable risk of injury to students and therefore render the teacher liable for injuries resulting from the risk created.

I
In January, 1973 plaintiff decided to go out for football and reported for spring training. Because his vision as determined by a physical examination was below the Board's standard, he was not allowed to engage in contact activities, but did participate in the exercises and non-contact drills. In accordance with the coaches' policy of having the football players take physical education together during the sixth period (2:15 to 3:15 p. m.), plaintiff was also transferred into that class.
About two weeks after spring training was completed, the sixth period P.E. class began a six-week unit in which wrestling and weight lifting were taught on alternate days. The first three wrestling classes consisted of warm-up calisthenics and instructions in basic positions and moves, with the moves being demonstrated and then performed by the students "by the numbers". In this procedure each move was broken down into numbered components, and the students upon command moved methodically through the entire maneuver, at first slowly and then with gradually increasing speed. According to plaintiff's testimony, the students were taught three or four moves in this manner, and at least one time they had paired off and wrestled, but not as hard as they could go, and they were limited to the move then being studied.[1]
On the fourth or fifth day the students, after warming up, were paired off and required to wrestle "hard" in a 30-second drill, using not only the moves they had been taught, but also any others which came to mind. The drill was conducted with a varsity wrestler on the mat acting as referee and the teacher seated in a chair about six feet away. In the course of the 30-second drill plaintiff found himself turned on his back, with his opponent on top, chest to chest. Plaintiff attempted to avoid being pinned by arching with his neck and feet, basically using a "bridge" which he had been shown both as a conditioning exercise and as a wrestling maneuver. When he heard the referee begin to count, plaintiff raised a leg and attempted to roll away, but he felt a sudden force on his chest, followed by pain in the neck, and he became paralyzed.

*836 II
A teacher has the duty to conduct his classes so as not to expose his students to an unreasonable risk of injury. Certain classes, such as science, physical education and vocational training, involve dangerous activities, and due care must be exercised in instructing, preparing and supervising students in these activities so as to minimize the risk of injury.
When an activity is potentially dangerous, a student should not be required to attempt such activity without first receiving proper instruction and preparation, including an explanation of basic rules and procedures, suggestions for proper performance, and identification of risks.[2] Considerations in determining whether instructions are proper and sufficient include the difficulty and inherent dangerousness of the activity and the age and experience of the students.[3]
Furthermore, potentially dangerous activities require supervision reasonably calculated to prevent injury. The reasonableness of supervision is determined largely by the same factors used to determine reasonableness of instruction and preparation.
No national or local guidelines or procedures have been established for teaching wrestling in physical education classes. However, since wrestling is a sport which involves physical contact and a certain degree of skill, and since participation exposes students to some risk of injury, the procedures must meet the standard of reasonableness and therefore must be reasonably calculated to minimize the risk of injury under the overall circumstances. The proof in this case therefore consisted of testimony of experts in wrestling, stating their opinions on the type and amount of instruction and supervision necessary for these particular students to attempt the drill in progress at the time of the accident without unreasonable risk of injury.

III
All experts agreed that conditioning is the first step in the teaching of wrestling and that the simpler moves must be taught first, building up to more complex moves. They disagreed, however, on the central issue of the instruction, conditioning and supervision necessary to prepare a beginning student for a 30-second hard wrestling drill with unlimited moves.
Plaintiff presented Paul Katz, a high school wrestling coach, who testified that it was highly likely someone would get hurt if P.E. students were allowed to wrestle hard with unlimited moves on the fourth day and that it was dangerous to allow novice wrestlers to execute a bridge in competition. He opined that allowing novices to wrestle hard, with only the instructions given to plaintiff, subjected them to unreasonable risk of injury.
Keith Bellow, a high school wrestling coach, stated that he would not allow two beginners to wrestle hard at any time during a short P.E. program, because of the unreasonable risk of injury, and that such courses should culminate in half-speed wrestling, limited to certain moves.
Brian Scully, a college P.E. teacher who coached wrestling in high school and college, testified that he would never allow beginners in a three-week course to reach full resistance, because they did not have sufficient skill to control themselves. He also noted that unskilled persons tire more quickly and are more prone to accidents in a state of fatigue. Moreover, he opined that a student should have six to eight weeks of wrestling instructions, including practice *837 with another person in a supporting position, before being allowed to use the bridge as a technique for escape from pinning, because of the risk of injury to the upper back and neck.
Surachi Harnsongkram, a high school wrestling coach who taught wrestling in high school P.E. classes, testified that during the first few weeks of classes he concentrated on conditioning and fundamentals (rules and legal holds) and did not get into wrestling until at least the third or fourth week of a nine-week session, depending on the students. He did not teach bridging as a maneuver until the fourth or fifth week, because it was not important. He opined that allowing a novice to wrestle hard for 30 seconds with unlimited moves in the fourth day of class would expose the student to an unreasonable risk of injury and that teaching the bridge as a wrestling maneuver in the first few days would subject the student to unreasonable risk of neck injury.
Edward Kavanaugh, a high school wrestling coach, did not allow beginners to wrestle hard for three or four weeks, but reasoned that bad habits picked up from wrestling too early would be hard to break. He conceded, however, that he taught fifth and sixth graders and allowed them to wrestle after five days of instruction.
In its defense the Board presented the P.E. teacher, who had no formal training in wrestling, having learned techniques from college wrestlers, books and short clinics. He believed there was nothing unsafe in teaching beginners several basic moves and letting them wrestle hard on the fourth or fifth day, as long as he watched them closely to prevent their using dangerous or illegal moves. He also noted this particular class, which consisted primarily of football players, learned quicker than a class of average students and, because of recently completed spring training, was in better condition.
Dennis Murphy, a high school wrestling coach, in answer to hypothetical questions, opined that the class had adequate physical conditioning (considering the recently completed spring football training, which included many exercises and drills that strengthened the neck) and had been adequately instructed to safely participate in 30-second wrestling drills.[4] He noted that wrestlers on their backs bridge naturally, stating he would not have stopped the match had he seen a beginning wrestler in the position plaintiff was in when he was injured.
Dr. David Klein, a neurosurgeon who had wrestled in high school and college, considered the described conditioning as sufficient for participating in 30-second wrestling drills.
Lester Alfortish, who had coached wrestling in junior high and high school and was also a wrestling referee, testified that beginners, if sufficiently conditioned, can safely participate in 30-second drills at full speed during the first week with restrictions against moves which are potentially dangerous or which apply pressure to joints. In his teaching he used bridging from the very beginning of instructions.
Raymond Charboneau, a high school wrestling coach who wrestled four years in college, considered the described conditioning and instruction as adequate for wrestling hard with unlimited moves on the third or fourth day, noting that competent beginning wrestlers can "pick up" 15 moves in three days. He asserted that bridging and rolling are natural maneuvers, which in his experience very young children have learned immediately in wrestling camps.
Alfred Johnson, a high school wrestling coach, considered 15 and 30-second wrestling drills with unlimited moves to be safe for adequately conditioned students after three days of instructions. He taught the bridging maneuver to his team in the first week of mat practice. He admitted, however, *838 that two unskilled wrestlers would tend primarily to utilize brute force during most of a 30-second drill and that additional instruction and practice at less than full speed would minimize the risk of injury.
Julius Palone, who had wrestled in college and taught wrestling in high school P.E. classes, opined that a class could wrestle hard in the middle of the second week, but that a class of athletes could progress faster.
Each of the Board's experts believed the situation and position of the wrestlers at the time of the injury was not potentially dangerous, and none would have stopped the drill because of danger. Moreover, each approved the teacher's supervision from a point six feet away, as long as he had a whistle and an experienced wrestler was on the mat as referee. Even some of plaintiff's experts (who believed the teacher should have been on the mat) admitted the teacher's presence there would not have prevented the occurrence of the injury.

IV
Plaintiff presented substantial and impressive expert opinion evidence that the students in plaintiff's class were subjected to unreasonable risk of injury in the 30second drill because of insufficient conditioning, which resulted in early fatigue and increased risk of injury; insufficient instruction and practice with fundamental moves; premature introduction of bridging as a wrestling maneuver; exposure to too many moves too quickly; and failure to limit the drill to the moves that had been taught.[5] On the other hand, the Board's expert evidence expressing contrary opinions was at least equally impressive. Reasonable minds could have differed on the conclusions to be drawn from the overall evidence in this record. Nevertheless, we cannot say that the trial court erred manifestly in finding the evidence did not preponderate in favor of a conclusion that the teacher's instruction and preparation for and supervision of the drill in which plaintiff was injured fell below any locally or nationally accepted reasonable standard of care for teachers under similar circumstances.
The judgment is affirmed.
AFFIRMED.
PER CURIAM.
In its application for rehearing the School Board argues the trial court's assessment of costs should be reversed or, alternatively, should be limited in accordance with R.S. 13:4521 to the stenographers' costs for taking testimony.
The trial court has wide discretion in assessing costs. C.C.P. art. 1920. The School Board has shown no abuse of discretion under the overall circumstances of this case.
As to the statutory exemption of public boards from the requirement of payment of court costs other than stenographers' fees, the court in Hopkins v. Department of Highway, State of Louisiana, 364 So.2d 616 (La.App. 3rd Cir. 1978) held that Act No. 467 of 1978, amending R.S. 13:4521 and adding R.S. 13:5112, should be given retroactive effect. Accordingly, the assessment of all costs against a department of the state was allowed to stand when the act became effective while the matter was pending on appeal.
We agree that this decision accords with legislative intention.
The application is denied.
APPLICATION DENIED.
NOTES
[1] Plaintiff had gone out for the varsity wrestling team during the preceding fall semester. After several days of practice, he dropped out because he had not completed the physical, but he continued to visit practice sessions and assist in meets.
[2] For a general discussion of teacher negligence, see Vacca, Teacher Malpractice, U. Richmond L.Rev. 8:447 (1973-1974) and Proehl Tort Liability of Teachers, 12 Vand.L.Rev. 723 (1959).
[3] For example, in LaValley v. Stanford, 272 App.Div. 183, 70 N.Y.S.2d 460 (1947) a P.E. teacher was held liable for an injury sustained by a student in a required boxing activity when the completely untrained student was allowed to go "right at it as hard as we could" with another completely untrained student, while the teacher sat in the bleachers. The court held that the teacher failed in his duty "to exercise reasonable care to prevent injuries".
[4] Plaintiff argues the hypothetical questions propounded to defendant's experts were not based on proved facts. Our review of the record convinces us that the questions were supported by proved facts in significant areas and that when cross-examination suggested certain assumptions were doubtful, the experts generally maintained the same opinion.
[5] Plaintiff used only one move that had not been taught, and that was the lifting of the leg to avoid pinning.