732 So.2d 749 (1999)
Zwireck SCOTT, Plaintiff-Appellee,
v.
RAPIDES PARISH SCHOOL BOARD, Defendant-Appellant.
No. 98-1754.
Court of Appeal of Louisiana, Third Circuit.
April 7, 1999.
Writ Denied July 2, 1999.
*750 David Lee Guillory, Pineville, for Zwireck Scott.
James Morgan Passman, Alexandria, for Rapides Parish School Bd.
BEFORE: YELVERTON, WOODARD, and GREMILLION, Judges.
YELVERTON, J.
Zwireck Scott, an 18-year-old student at Peabody High School in Rapides Parish, was injured during a physical education class on March 22, 1994, when he made a long jump at full speed and landed wrong. He sued the Rapides Parish School Board for damages claiming, among other things, that he had not been properly instructed, prepared, and supervised on how to safely perform a long jump. The trial judge, applying the duty-risk analysis, found liability and awarded damages in the amount of $207,000. The School Board appealed. We affirm.

FACTS
Zwireck was about to graduate and did in fact graduate from Peabody in May of 1994. He had never gone out for track, but he was on the varsity basketball team at Peabody. The basketball season was over, and Zwireck knew he was not going to get a college scholarship in basketball so he turned his interests to track. Zwireck thought he could jump pretty far, and if he could make the team, he might get a scholarship.
*751 There were a number of witnesses at the trial, but the significant facts came from the testimony of Zwireck and his coach, Joseph Duncan, a social studies teacher, assistant football coach, and head track coach at Peabody.
Coach Duncan testified that he had just taken over track as the head coach. He coached all track and field events including the long jump, the triple jump, the high jump, and running. The sand pit for the long jump was located on the Peabody campus, and the sixth hour physical education class was the only time it was used. Zwireck had been jumping in the sand pit for several days, and the coach was encouraging him to come join the track team as the third member of the long jump team. He had been watching Zwireck jump five or six times a day for three or four days, had critiqued him some, and was impressed. There were several other kids long jumping that day during the physical education class, including the other members of the team. On one jump before he was hurt, Zwireck had jumped 21 feet and he had good basic form. Before he made the jump when he was to be injured, both Zwireck and the coach knew that Zwireck was going to go all-out, get some distance, and see what he could do.
Coach Duncan admitted that he had given no instructions of any kind to Zwireck. He had not talked to him about proper landing or control in the air and did not discuss with him any risks involved in long jumping. The first mistake that he ever saw Zwireck make was the time he hurt himself; his landing was wrong, one foot was slightly ahead of the other, and his feet were not planted parallel to the course.
Zwireck testified that in the days before his accident he was just "running and jumping." He described his speed as half speed. On the day of the accident, after two jumps he and the coach decided that he would go all-out. He jumped like he was doing a basketball lay-up to get some height. He landed with his knees bent and his right knee popped. Nobody had ever instructed him on how to long jump. He knew where the board (jump line mark) was, and he knew not to cross it before jumping because that would be a "fault." The coach had told him not to worry about faulting, to just jump. He did not know how to pace for the run-up, how to position his body, or how to launch himself into the air. Coach Duncan never instructed him what to do about his body position while he was in the air, or how to land. He understood only that he had to start at a mark, jump as far as he could, and land with bended knees.

THE EXPERTS
Two experts testified, one for the plaintiff and one for the defendant. Dr. Gerald George, a professor at University of Southwestern Louisiana, testified for the plaintiff. He was accepted as an expert in biomechanics and sports safety. He defined biomechanics as the application of physics to human movement. His specialty was gymnastics, but he also dealt with track.
Dr. George explained that long jumping is not primordial, and in that respect it differs from vertical jumping or running; it is a skill requiring training. The takeoff into the air is important because it sets the stage for all that is to follow. Teaching and training are essential. Run-throughs and half-runs are reasonably safe activities. Going all-out in a long jump involves other factors. The jumper needs to know the technique to control his body when he is in the air going horizontally forward and how to control his landings. The instructor should test on running speed and vertical jumping, not on distance. It was Dr. George's opinion that, without any instruction as to the mechanics of this skill, when a student is allowed to go out and attempt jumps "at full bore," this unreasonably disposes him to injury. He explained that you would not do it with a pole vaulter, and you should not do it with a long jumper. Most of the training goes into the fundamentals. Seventeen *752 times (his estimate of prior jumps) is not enough to teach control. The coach should not have let Zwireck try something he was not ready to do. This was a case of lack of performer readiness, and that was the cause of this injury. He was convinced that Zwireck would not have been injured, or so severely injured, if he had been given proper instruction and training before he attempted an all-out jump.
David Fried testified for the School Board. He was accepted as an expert in the area of sports safety, track and field, and coaching.
Mr. Fried disagreed with Dr. George in one important respect: it was Mr. Fried's belief that a different rule applies when the tryout kid is not a member of the track team. Mr. Fried's experience, as a long jumper and as a long-jump coach for 25 years, convinced him that a tryout is totally different from a practice session. He agreed with the instruction and training requirements outlined by Dr. George, but would require these to be followed only after the athlete has been selected and put on the team. In the present case, Zwireck was not a member of the team. He was in the middle of a tryout. "In a try out, that's what you dojust take off and do the best you can."
Mr. Fried testified that long jumping was probably the safest activity in all the field events. He stated that very few injuries occurred in long jumps. That is why the coach does not go over the basics and essentials at tryout time. He said that you use tryouts to determine the athletes with natural ability and, once they are on the team, then you start training in the basics and essentials. He disagreed with Dr. George's opinion that long jumping is not primordial. In Mr. Fried's opinion, jumping is a natural ability.

ACTION OF THE TRIAL COURT
The trial judge stated he had difficulty in deciding which expert opinion to adopt finding that both experts were "equally qualified and convincing." Nevertheless, the trial judge agreed with Dr. George that the duty to prepare, instruct and teach Zwireck to long jump was intended to protect the plaintiff from this type of harm arising in this manner.
The trial judge applied the duty-risk analysis and concluded that all elements were proved. The court found that the failure of Coach Duncan to properly prepare and instruct Zwireck was the cause in fact of his injuries. The trial judge found that the coach had a duty not to expose Zwireck to an unreasonable risk of injury. Relying on the expert testimony, the trial court found that the duty was breached.
When the trial judge reached the element of legal cause, he posed the issue as this: "Is there an `ease of association' between the duty owed by Duncan to instruct, prepare, and supervise the petitioner to minimize his risk of injury in a pit where there had never been an injury, on an injury that he did not know was foreseeable and an injury that the defendant's expert said he had not seen in twenty-five years?" The court then answered its own question by stating that under the facts of this case, it was easy to associate the risk of petitioner's injury to the duty sought to be enforced. "The long-jump requires much motor coordination with sprinting, hitting the board, jumping for height, distance and landing, each of which are important and depend upon the proper performance of the other." The judge concluded, "Duncan's duty was to properly prepare petitioner in each of these skills to minimize the risk of injury; by failing in this duty, he exposed petitioner to a risk of injury to his knee, which petitioner did in fact suffer."

ASSIGNMENTS OF ERROR
The School Board asserts the trial court erred in the following findings:
(1) That it breached its duty to the plaintiff.
(2) That the breach of duty was a cause-in-fact of plaintiff's injuries.

*753 (3) That the particular risk to plaintiff fell within the scope of defendant's duty.
The School Board's fourth assignment of error is that the trial court awarded excessive damages.

Assignment of Error # 1: Breach
In order to recover under a negligence claim, the plaintiff has to prove that (1) the defendant owed a duty to conform its conduct to a specific standard; (2) the defendant failed to conform its conduct to this standard thereby committing a breach of that duty; (3) the defendant's substandard conduct was a cause-in-fact of plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of plaintiff's injuries; and (5) actual damages. Roberts v. Benoit, 605 So.2d 1032 (La.1991), on rehearing, 605 So.2d 1050 (La.1992). Every negligence case should be decided on its own facts and circumstances. Todd v. State Through Social Services, 96-3090 (La.9/9/97); 699 So.2d 35.
First, the School Board argues that the trial court erred in finding that it breached its duty to Zwireck in these factual circumstances. We disagree. The case of Green v. Orleans Parish School Bd., 365 So.2d 834 (La.App. 4 Cir.1978), writ denied, 367 So.2d 393 (La.1979), clearly delineates a duty on the part of a teacher to exercise reasonable care and supervision over students in his custody. A teacher must protect students from an unreasonable risk of injury. The court stated:
A teacher has the duty to conduct his classes so as not to expose his students to an unreasonable risk of injury. Certain classes, such as science, physical education and vocational training, involve dangerous activities, and due care must be exercised in instructing, preparing and supervising students in these activities so as to minimize the risk of injury.
When an activity is potentially dangerous, a student should not be required to attempt such activity without first receiving proper instruction and preparation, including an explanation of basic rules and procedures, suggestions for proper performance, and identification of risks. Considerations in determining whether instructions are proper and sufficient include the difficulty and inherent dangerousness of the activity and the age and experience of the students.
Id. at 836. (footnotes omitted)
Zwireck's accident occurred during a sixth hour physical education class. He was injured while putting his maximum effort into a long jump. The law requires that supervision be reasonable and commensurate with the age of the student and the attendant circumstances. Fisher v. Northwestern State University, 624 So.2d 1308 (La.App. 3 Cir.1993), writ denied, 93-2764 (La.1/7/94); 631 So.2d 452. Therefore, Coach Duncan had a duty to exercise reasonable care and supervision by providing Zwireck, a high school student unfamiliar with the long jump technique, adequate and proper instruction regarding the performance necessary to successfully and safely complete the long jump under maximum effort conditions.
The School Board attempts to distinguish the act of jumping naturally, that is, using one's innate abilities during physical education class, versus skilled jumping utilized in team practice. According to the School Board, Zwireck was simply using his innate jumping ability rather than the skilled techniques used to get greater distance in long jumping. The School Board's expert, Mr. Fried, testified that until a student becomes a member of the team, he is merely participating in a natural jumping activity and a natural running jump does not involve any kind of skill of any real nature. Only after a student becomes a member of the team does a duty arise on the part of the coach to instruct the team members on the proper techniques and skills of long jumping. *754 Only after an athlete is selected for the team, according to Mr. Fried, does the coach need to take him through the various progressions and various safety techniques. According to Mr. Fried, once the team is formed, then the entire progression of skills is taught.
Why safety consciousness is important at one stage but not at the other is a distinction we are unable to appreciate. Both parties' experts testified that long jumping is a skilled sport. As a skilled sport, long jumping requires a reasonable amount of preparatory instruction before students are allowed to perform all-out or maximum effort jumps. Because both experts testified that long jumping is a skilled sport, we cannot comprehend the argument that Zwireck was merely using his natural jumping ability, the exercise of which presumably involved no risk. We agree with the trial judge that he was performing a long jump, a "skilled jump," which demanded extra attention be given to proper form and technique.
Mr. Fried acknowledged that, during his coaching days, once his team was selected, he spent a "great deal of time" presenting audio and visual aids to his athletes. He agreed that sequential training not only makes the athlete a better jumper, but it also makes the athlete a safer jumper. Moreover, he agreed that long jumping has certain inherent risks. Mr. Fried admitted that, had this been a team practice, Coach Duncan's lack of instruction would have fallen below the standard of care.
Dr. George, plaintiff's expert, testified that its makes no difference as to whether this was a team practice or a physical education classappropriate training must take place regardless. Dr. George also testified that the fact that Zwireck had successfully completed 17 half-speed jumps (his estimate) in five or six days was insufficient preparation. Dr. George testified that, depending on the student's abilities, approximately 30 days of progressive training is needed to adequately prepare students for all out jumps. He stated that the coach could have tested Zwireck's abilities simply by assessing running speed and vertical jumping because Zwireck did not have the necessary control yet to risk an all-out jump.
Whereas the question of the defendant's duty presents a legal question, breach of that duty presents a factual question; therefore, we will not overturn the trial court's decision as to breach in the absence of manifest error. Herring v. Bossier Parish School Bd., 25,540 (La.App. 2 Cir. 2/23/94); 632 So.2d 920; Stobart v. State, 617 So.2d 880 (La.1993). Ultimately, the experts agreed that an inherent risk existed. The trial court's finding that the defendant breached its duty of care to Zwireck is not clearly wrong. The coach breached his duty to Zwireck to adequately instruct and supervise him in participating in the long jump.

Assignment of Error # 2: Cause-in-Fact
The School Board further argues that the breach of this duty was not the cause-in-fact of Zwireck's injuries. The trial court found that Coach Duncan's failure to prepare and instruct Zwireck was a cause-in-fact of plaintiff's injuries. A cause-in-fact determination is one of fact on which appellate courts must accord great deference to the trial court. Cay v. State, DOTD, 93-0887 (La.1/14/94); 631 So.2d 393. Only if the trial court is manifestly erroneous may this factual finding be reversed. Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990).
The School Board tends to rely on the fact that Zwireck had made 17 uneventful jumps within five or six days prior to his injury and that moreover, Zwireck had a "lifetime of running and jumping experience." However, the trial court found that this did not equip him with training and experience in the finesse of the long jump in an all-out, maximum effort test. His lack of skill, and the consequent injury, was the result of inadequate *755 instruction and preparation. Therefore, we agree with the trial court that Coach Duncan's failure to properly prepare and instruct Zwireck was the cause-in-fact of Zwireck's injuries.

Assignment of Error # 3: Legal Cause
Next, the School Board argues that the trial court erred in finding legal cause that the particular risk to Zwireck fell within the scope of the School Board's duty.
The word "cause" in legal cause demands an inquiry into whether a legal standard of care exists and requires delving into policies for and against extending the asserted legal standard of care to protect the particular plaintiff against the particular harm. Todd, 699 So.2d 35. It is a purely legal question. Id. Whether a risk is within or without the scope of the duty is determined by the case of association of the injury with the rule of conduct sought to be enforced. Id. The extent of protection owed a particular plaintiff is determined on a case-by-case basis to avoid making a defendant an insurer of all persons against all harms. Id. Foreseeability is not always a reliable test. Id. The "ease of association" test melds policy and foreseeability. Roberts, 605 So.2d 1032. According to Faucheaux v. Terrebonne Consol. Government, 615 So.2d 289, 294 (La.1993) (citations omitted),
The scope of protection inquiry asks whether the enunciated rule extends to or is intended to protect this plaintiff from this type of harm arising in this manner. In determining the limitation to be placed on liability for defendant's substandard conduct, the proper inquiry is often how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced.
Zwireck's injury was unusual for this type of activity. The School Board's expert testified that he had not seen such a serious injury in 36 years. Therefore, the School Board argues that the risk and injury experienced by Zwireck were unforeseeable.
However, foreseeability alone is not determinative. According to Roberts, 605 So.2d 1032, there is no "rule" to determine the scope of the duty. It is ultimately a policy question as to whether the particular risk falls within the scope of the duty. Moreover, although case of association encompasses the idea of foreseeability, it is not based on foreseeability alone.
Foreseeability is not always a reliable guide, and certainly it is not the only criterion for determining whether there is a duty-risk relationship. Just because a risk may foreseeably arise by reason of conduct, it is not necessarily within the scope of the duty owed because of that conduct. Neither are all risks excluded from the scope of duty simply because they are unforeseeable. The ease of association of the injury with the rule relied upon, however, is always a proper inquiry.
Tassin v. State Farm Ins. Co., 96-754, p. 7 (La.App. 3 Cir. 3/5/97); 692 So.2d 604, 608, writ not considered, 97-0895 (La.5/9/97); 693 So.2d 776, quoting Hill v. Lundin and Associates, Inc., 260 La. 542, 256 So.2d 620, 622-623 (1972).
In the present case the particular risk to plaintiff falls within the scope of protection owed by the School Board. The School Board, through Coach Duncan, had the duty during a physical education class to minimize the risk of injury to students participating in potentially dangerous physical education activities. This could have been done by proper instruction, preparation, and supervision. By allowing Zwireck to perform an all-out maximum-effort jump, before teaching him at least the basic technical skills necessary to properly and safely take off, control himself in the air, and land, the coach breached his duty. Zwireck suffered a bad knee injury when he made a bad landing because he did not know the rudiments of the long jump. We find the risk to Zwireck encompassed within the School *756 Board's duty to prevent an unreasonable risk of harm.
We recognize our duty to keep policy considerations at the forefront. One important policy consideration is the protection of the strong principle that school boards are not insurers of the safety of children in their care. Prier v. Horace Mann Ins. Co., 351 So.2d 265 (La.App. 3 Cir.), writs denied, 352 So.2d 1042, 1045 (La.1977). Contrary to the School Board's assertion, our decision does not place an unreasonable duty upon teachers to supervise in every situation. Our decision demands only that teachers and coaches adequately supervise children who are participating in certain classes which involve dangerous activities such as long jumping. When there is a lack of supervision, and injury results, the risk of harm is within the scope of protection afforded by the duty breached.

DAMAGES
Finally, the School Board asserts that the trial court's award of damages is excessive. The trial judge made a lump sum award of $200,000 to Zwireck for his personal injury, disfigurement, scarring, loss of use, disability, pain and suffering, mental anguish, and for past medical expenses. He made a special award of $7,000 for all future medical expenses. Of the $200,000 lump sum award, we are uncertain as to what amount was for general damages, but we believe that most of it was.
Rarely should an appellate court disturb an award of general damages; the trier of fact is given great and even vast discretion in calculating the amount of damages. Only where the award is beyond what a reasonable fact finder could assess for the effects of this particular injury to this particular plaintiff under the particular circumstances should an appellate court raise or lower the general damages assessed. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379, (1994). Therefore, the proper test in assessing damages is whether, viewing the evidence in the light most favorable to the defendant, a reasonable trier of fact could have assessed damages as they were assessed. Revel v. Snow, 95-462 (La.App. 3 Cir. 11/2/95); 664 So.2d 655, writ denied, 95-2820 (La.2/2/96); 666 So.2d 1084.
Following the accident, Zwireck went to the hospital. Approximately seven days later, Dr. Angela Mayeaux, an orthopedic surgeon, performed exploratory surgery on Zwireck's right knee and reattached the lateral meniscus and repaired the lateral ligaments. Following the surgery, Zwireck was prescribed a narcotic pain medication and underwent physical therapy.
Zwireck also suffered and presently suffers from a condition known as drop foot. Dr. Mayeaux explained this condition as one in which the peroneal nerve does not work and a person is unable to lift the ankle or the toes up. On June 8, 1994, Dr. Mayeaux noted that there was no return of the peroneal nerve function. At this time she transferred Zwireck to Dr. Christopher Rich.
Dr. Rich, also an orthopedic surgeon, first saw Zwireck on July 13, 1994. Zwireck still had the drop foothe was unable to lift his foot up at the ankle joint. On August 24, 1994, Zwireck saw Dr. Rich again who then referred him to another doctor. On March 10, 1997, three years later, Dr. Rich saw Zwireck once more. He noted that there was absolutely no return in strength or motor function of the muscle groups which would allow Zwireck to bring his foot up. Zwireck still complained of numbness and tingling on the top of his foot. The doctors' testimony substantiate Zwireck's claim.
Damages assessed against the School Board encompassed Zwireck's pain and suffering. The primary considerations in assessing general damages are the severity and duration of the injured's pain *757 and suffering. Francis v. Brown, 95-1241 (La.App. 3 Cir. 3/20/96); 671 So.2d 1041. Zwireck testified that he was in pain after the accident. He then underwent surgery to correct his knee problem. Following this, Zwireck used crutches, wore a brace, and underwent physical therapy. Zwireck continues to experience pain during the nighttime. He testified that nearly every night he has to massage his foot before he can go to sleep. He experiences a numbness and tingling down the side of his leg and on top of his foot.
Zwireck no longer plays basketball or other sports activities for fear that he will hurt his knee again. Prior to this injury, Zwireck was a very active young man. He testified that he still finds slack in his knee. He is embarrassed at the scar left by the surgery and wears shorts only around his home. He also feels clumsy due to the drop foot condition. He testified that he cannot lift his foothe has no strength in it.
The award for damages also compensated Zwireck for disability. He graduated from high school shortly after the injury. In assessing damages, the trial judge may have considered that Zwireck was unable to gain steady employment due to his injury. Up to the date of the trial, Zwireck held only one job; he worked at Target Department Store for a total of 12 days. Zwireck testified that he had trouble carrying items because he feared his knee would give out again. According to Zwireck, he applied to numerous other stores but was not hired because of his disability. He testified there was a noticeable "change in attitude" of the interviewer once he informed him of the problem with his leg. Disability is supported by Dr. Rich's assessment that Zwireck's injury resulted in a 20% disability of the whole person and 49% disability of the leg.
Considering the facts before us, the severity of Zwireck's injury, and the pain and suffering incurred, we do not find that the trial judge awarded excessive damages.
We also affirm the award as to future medical expenses. Although Zwireck can function using a brace, Dr. Rich noted that, if Zwireck feels that he cannot work or do things functionally, he should undergo a bridle procedurea surgical procedure which could improve his drop foot condition. He testified there is over a 90% success rate with the surgery. The trial judge awarded $7,000 for the future medical expenses based on the testimony of both Drs. Rich and Mayeaux as to the cost of this procedure. Therefore, the trial court properly awarded damages as to the cost of this procedure.
For the above reasons, we affirm the judgment of the trial court. Costs are assessed to the Rapides Parish School Board.
AFFIRMED.