632 So.2d 920 (1994)
Oscar B. HERRING, individually and as the Administrator of the Estate of His Minor Child, Carey Shane Herring, Plaintiff-Appellant,
v.
BOSSIER PARISH SCHOOL BOARD, and David Thrash, Defendants-Appellees.
No. 25540-CA.
Court of Appeal of Louisiana, Second Circuit.
February 23, 1994.
*921 A. Richard Snell, Bossier City, Theodore E. Johnson, Jr., Shreveport, for plaintiff-appellant.
Mayer, Smith & Roberts, Shreveport by Alex S. Lyons, Roland V. McKneely, Jr., Bossier City, for defendants-appellees.
Before MARVIN, C.J., and HIGHTOWER and BROWN, JJ.
MARVIN, Chief Judge.
Carey Herring, a high school baseball player, and his father appeal a judgment rejecting their demands arising out of a head injury sustained by the player who, at age 15, was struck by a baseball during batting practice. We shall refer to plaintiffs simply as Herring.
Herring contends the court erroneously stated and applied the wrong standard of care to the defendant coach, David Thrash, who was conducting batting practice, feeding balls into a pitching machine for a batter to hit when Herring and three other players were in the infield.
Finding that the record supports the court's factual findings and that the court applied a correct legal standard of care under the circumstances, we affirm.

THE STANDARD OF CARE
Herring's argument, here and below, is that Coach Thrash acknowledged and breached "his specific duty to protect his ballplayers from the probabilities of being struck by a batted ball during batting practice." He complains that the trial court stated in reasons for judgment that the duty of a coach is similar to that of a player, specifically "to act reasonably ... and to refrain from any wanton or reckless conduct likely to result in harm ... to another." He suggests that this statement implies a lesser standard of care than the standard imposed on a teacher. We disagree.
A coach or teacher has the duty to those under his or her charge to recognize and exercise his or her specific responsibilities under the circumstances to protect them from foreseeable harm from the conduct of things or persons under that coach's or teacher's supervision. A teacher or coach, however, is not the insurer of the safety of students in all circumstances and is not held to the impossible standard of exercising constant supervision over each student involved in a group activity. Hunter v. Caddo Parish School Bd., 627 So.2d 772 (La.App. 2d Cir. 1993); Ferguson v. DeSoto Parish School Bd., 467 So.2d 1257 (La.App. 2d Cir.1985), writ denied; Green v. Orleans Parish School Bd., 365 So.2d 834 (La.App. 4th Cir.1978), writ denied.
The trial court considered the coach's duty in the context argued by Herring. The court effectively inquired whether Coach Thrash acted as a reasonable coach supervising high school baseball players under the specific circumstances and whether he recognized and exercised his responsibilities in a reasonable manner to protect them from foreseeable harm. CC Art. 2315.
The court's use of the word "similar" suggests to us only that the standard of reasonableness applies to one in the capacity of a player and to one in the capacity of a coach. The court did not say or suggest that a coach's duty toward his players is no greater than that owed by one player to another. The court squarely found and held the coach to the standard that a coach should act as a reasonable coach should act.
In a negligence action, a particular defendant's duty in given circumstances presents a legal question, what is the specific standard of care to be applied. Whether a defendant's conduct breached that standard presents a factual question.
Recognizing that each negligence case stands on its own circumstances, we do not find on this record, any error of law or fact.

*922 FACTUAL SUMMARY
Coach Thrash had rules, procedures and routines for orderly batting practice that were designed to allow him reasonable supervision and to provide for the reasonable safety of his players. His players knew these rules and procedures. Expert witnesses approved those rules for the trial court, considering them to meet the standard customarily used by coaches of high school baseball players.
At batting practice each batter would be required to bunt several balls in succession and thereafter, to swing away at, or fully hit, several more balls. The balls were "pitched" to the batter by a pitching machine that was "fed" by the coach at the pitcher's mound. Each player first underwent bunting practice, followed by hitting practice. On each player's first bunting practice ball the coach would yell out "bunting." On each player's first hitting practice ball the coach would yell out "hitting."
Before inserting a ball in the pitching machine Coach Thrash would hold the ball with his arm extended and over the machine for all players to see. After a short pause in this position, Coach Thrash then, in one direct motion, would lower his arm and "feed" the ball into the machine to accomplish the pitch.
Players on the field were instructed and required to listen to the coach and to keep an eye on or watch the ball at all times and to be in a ready defensive posture on every pitch. Infielders were required to be behind the infield grass during hitting practice. Balls that were not fielded were "shagged" or picked up by the players only after each batter completed bunting practice and after that batter completed hitting practice.
The shagged balls were returned to a bucket, one in the outfield, another behind the coach at the pitcher's mound. The players were not otherwise allowed to shag balls when a batter was at the plate. One player stood behind the coach to take balls from the bucket and give them to the coach who fed the machine. A screen protected the coach and those players who happened to be behind the coach, assisting him or returning shagged balls to the bucket.
Herring was behind Coach Thrash and the screen after he and three of the other infielders had returned shagged balls to the bucket as the batter completed bunting practice. The other players who had shagged balls returned to their infield positions and were in a defensive posture when the batter began hitting practice. After the batter began hitting practice and had "hit" one or two balls, Herring made his unfortunate move, intending to return to his shortstop position from behind the screen. Stepping from behind the screen toward shortstop, Herring leaned over to shag or pick up a ball on the field when the hard hit ball, a line drive, struck him.

CONCLUSION
The trial court found that Coach Thrash's rules and procedures met the prudent practice procedures used by coaches of young baseball players. The court found that Coach Thrash did not violate or breach those rules and procedures when Herring was struck by the hard hit ball.
Herring did not heed the coach's warning that the batter was "hitting." He did not keep his eye on the ball or watch either the batter or the coach as the coach began the "pitch" motion with the ball that struck Herring. Herring did not assume a defensive posture when leaving the safe area behind the screen, but instead focused upon and attempted to pick up or shag a ball that was in his path when the batter had not completed hitting practice.
The above conclusions are supported by the record. On this record we cannot find the trial court erred, either in defining Coach Thrash's duty or in finding no breach of that duty. See and compare Ferguson and Green, both cited supra.

DECREE
Adopting the detailed factual findings of the trial court as summarized above, and at the cost of appellants, we AFFIRM.