729 So.2d 686 (1999)
Christine PREJEAN, Individually and on Behalf of Her Minor Son, Harvey Prejean, Jr.
v.
EAST BATON ROUGE PARISH SCHOOL BOARD, Robert Combs and Daryl Harding.
No. 98 CA 0063.
Court of Appeal of Louisiana, First Circuit.
February 19, 1999.
George S. Bourgeois, Jr., Opelousas, Counsel for Plaintiff/Appellee Christine Prejean et al.
Harold J. Adkins, Baton Rouge, Counsel for Defendants/Appellants East Baton Rouge Parish School Board and Robert Combs.
Before: FOIL, KUHN, and WEIMER, JJ.
KUHN, J.
This appeal involves a personal injury claim. Harvey James Prejean, Jr., a student enrolled in the fifth grade at Dalton Elementary School, suffered a severe fracture to his leg while participating in a basketball practice held on the school premises after school hours. Plaintiff, Christine Prejean, individually and on behalf of Harvey, filed suit against defendants, East Baton Rouge Parish School Board ("the School Board"), and Robert A. Combs and Daryl Harding, the basketball team's volunteer coaches. The trial court ruled in favor of plaintiff and awarded damages totaling $50,682.00. We reverse.

FACTS AND PROCEDURAL BACKGROUND
Harvey was injured during a basketball practice on February 21, 1994, while his team practiced on an outdoor concrete court. The basketball team consisted of mainly fourth and fifth grade students and some third graders. Combs explained that the basketball team was organized through the Big *687 Buddy Program, which he described as an organization which assists the schools by having volunteers work with the children in various extracurricular activities. Combs testified he had coached the team for approximately three to four years prior to Harvey's accident. Harding had also coached the same team for two to three years prior to the accident. Neither of the coaches had received any instruction regarding the coaching of children from the school board.
Combs normally conducted warm-up and lay-up drills at the beginning of his practices and then would have the boys participate in a scrimmage. He testified that he generally played in the scrimmages with the boys if he did not have enough student players to form a team or if he wanted to demonstrate a particular technique. Combs explained that he engaged in a lot of "hands-on" work with the children so that he could teach various plays and defensive techniques.
On the day of the accident, Combs recalled that ten players participated in a scrimmage, nine students and himself, with five players on each team. Harding was sitting on the sideline with several other players who were supposed to be watching the scrimmage while Harding gave instructions regarding the plays.
According to Combs' testimony, immediately prior to the accident in question, he and another student, Truman Ratcliff, were working on a "trapping and pressing" technique. Harvey was dribbling the ball down the court while facing Truman and Combs. At some point, Harvey lost the ball and Truman, Harvey and Combs all attempted to recover it. Combs stated that Harvey was in front of him and about four to five feet to his right. Truman was to Comb's left side when the ball became loose near mid-court. The ball went to Harvey's left when he lost control of it. In an attempt to recover the ball, Truman accelerated his speed and moved between Combs and Harvey. Truman was leaning down as he attempted to recover the ball. Combs explained, "I bumped Truman as he was going for the ball and he fell into Harvey." Combs specifically denied having pushed Truman and also denied having intentionally bumped Truman. According to Combs' testimony, he was running at a "slow jog" when he bumped into Truman and the lower part of his body bumped into the upper part of Truman's body. Truman fell on Harvey's legs which got tangled up causing Harvey to fall onto the hard surface of the basketball court. Combs called for emergency assistance when he saw that Harvey's left leg was injured. Harvey remained lying on the court until the paramedics arrived and transported him to a hospital emergency room.
Harvey recalled that when the accident happened, Combs had been demonstrating plays to the students and he (Harvey) was playing the position of guard. As he was dribbling the ball, it hit his foot and went to his left. Truman was moving from Harvey's right to recover the ball and was leaning down to get the ball which was rolling on the ground. Combs also attempted to recover the ball. Harvey explained that Truman's shoulder first hit Harvey's left knee, causing him to fall to the ground. Truman then fell on Harvey's leg. Harvey testified his leg broke when Truman fell on it. Harvey stated he did not know whether Combs had bumped into or pushed Truman. Harvey also testified that Combs did not usually participate in the scrimmages as a team player.
Harvey's younger brother, John Prejean, who was nine years old at the time of the accident, testified that he witnessed the accident. He explained that he had been watching the basketball practice and decided to walk back towards the school to get some water from the water fountain. When he was about halfway towards the water fountain, he looked back towards the court. Although he did not see the ball, he stated that when he turned around, he saw Combs push Truman to the side with his hands. He did not recall whether Combs used one or two hands when he pushed Truman. John said he did not see Harvey dribbling the ball, but saw Harvey running down the court playing defense. He described Combs as being to Harvey's right side and Truman as being between Harvey and Combs. He explained that Truman was leaning towards Harvey *688 and running down the court when Combs pushed him.
Harding did not witness Harvey's injury because his attention was briefly diverted while he disciplined some of the other players on the sideline of the court. Although Truman Ratcliff was subpoenaed to appear at the trial of this matter, he was not present to testify.
Combs was approximately twenty-seven years old when the accident occurred, measured five foot six inches tall and weighed approximately one hundred eighty-two pounds. Harvey was eleven years old at the time of the accident and weighed about ninety pounds. Combs estimated that Harvey was about three to four inches shorter than himself and Truman was about six to seven inches shorter than himself.
During the trial, defense counsel stipulated that: 1) Combs was acting in the course and scope of his capacity as a volunteer coach for the School Board; and 2) if Combs was found liable, the School Board would be vicariously liable for his actions.
In written reasons for judgment, the trial court made the following pertinent factual findings:
During the scrimmage, ... [Harvey] was dribbling the ball up court while the coach and another student were at half court waiting to "trap" [Harvey]. [Harvey] unexpectedly lost the ball and he, the other student and Coach Combs all went for the ball. While doing this, Coach Combs bumped the other student who fell onto [Harvey] resulting in a leg fracture.
Reaching the conclusion that Combs and the School Board were liable for Harvey's injury, the court reasoned as follows:
The Court is of the belief that when a coach chooses to interject himself into a game where children as young as plaintiff are involved it is foreseeable that an injury such as the one which occurred here will happen. The Court recognizes that involvement in sports does carry with it a certain degree of risk and that most athletic injuries are not tortious injuries, but rather just part of the normal risk associated with sports. The Court also recognizes that the School Board is not the insurer of the safety of children. However, in this situation when the coach chose to participate in a game and attempted to retrieve a ball that two students were also attempting to retrieve, the risk of injury was great, and he breached a duty to protect the plaintiff from harm.
Based on these findings, the court awarded plaintiff $35,000.00 in general damages and $15,682.00 in medical expenses. In accordance with this ruling, the court signed a judgment in favor of Mrs. Prejean and against the School Board and Combs, jointly, severally, and in solido, for the sum of $50,682.00.
The School Board and Combs have appealed contending that: 1) Combs' actions were not a cause-in-fact of Harvey's injuries; and 2) the School Board did not breach a legally imposed duty of care in favor of Harvey.[1]

ANALYSIS
Each negligence case must be analyzed based on the particular facts of the case. A defendant's duty in any given circumstance presents a legal question; i.e., what is the specific standard of care to be applied? The inquiry of whether a defendant's conduct breached that standard presents a factual question. Herring v. Bossier Parish School Bd., 25,540 (La.App.2d Cir.2/23/94); 632 So.2d 920, 921.
A coach has the duty to exercise his or her specific responsibilities in such a manner as to protect those under his or her charge from foreseeable harm. Herring v. Bossier Parish School Bd., 632 So.2d at 921. The scope of such a broadly stated duty is necessarily fact-specific, to be determined on a case-by-case basis in light of the respective relationships and circumstances of the parties. Harvey v. Ouachita Parish School Bd., 28,400, p. 9 (La.App.2d Cir.5/8/96); 674 So.2d 372, 377, writ denied, 96-1898 (La.11/1/96); *689 681 So.2d 1260. Furthermore, a coach does not insure the safety of those in the coach's charge in all circumstances. Herring v. Bossier Parish School Bd., 632 So.2d at 921.
In the present case, the coach had a duty to act reasonably while supervising the basketball practice and to exercise his coaching duties in such a manner as to protect the student players from foreseeable harm.
The trial court found that the injury which occurred in this case was foreseeable when the coach chose to interject himself into the scrimmage with young children. The trial court reasoned that the risk of injury was great, and Combs breached a duty to protect Harvey from harm when Combs "attempted to retrieve a ball that two students were also attempting to retrieve ...." During the oral arguments before this court, plaintiff acknowledged that Combs' action of interjecting himself into the scrimmage was not the questionable conduct. We agree that a coach's physical participation in a game is not substandard conduct; physical demonstration of techniques by a coach is essential to learning in athletics. Rather, plaintiff asserted that Combs' substandard conduct was the manner in which he attempted to recover the loose ball.
We disagree with the trial court's conclusion that Combs breached a duty to the students by participating in the scrimmage and attempting to retrieve the ball. The record fails to establish that Combs' conduct in attempting to recover the loose ball presented any greater risk of injury to Harvey or the other players than the risk of injury generally involved in playing basketball. Virtually all team sports involve the risk of physical contact and, thus, the risk of injury.
The trial court found that Combs "bumped" Truman who then fell onto Harvey. The record establishes that as Truman attempted to recover the ball, he accelerated his speed and moved between Harvey and Combs. During this maneuver, Combs bumped into Truman. We find the trial court was manifestly erroneous in concluding that Harvey's injury was foreseeable as a result of Combs' action of participating in the scrimmage and attempting to recover the loose ball. A review of the record indicates this was an unfortunate accident, and given the fact Coach Combs merely "bumped" Truman who fell into Harvey, it was not foreseeable such a serious injury would result. We do not agree that Combs placed Harvey at risk of harm by participating in the scrimmage and attempting to recover the ball. Combs' actions did not constitute a breach of his duty to supervise his players in a reasonable manner and to protect the players from foreseeable harm. Because we conclude Combs did not breach the duty owed to the student players, we find no liability arising from Combs' conduct.

CONCLUSION
For the above reasons, the judgment of the trial court in favor of Christine Prejean and against the School Board and Combs is reversed. The trial court costs and the costs of this appeal are to be paid by plaintiff-appellant, Christine Prejean.
REVERSED.
NOTES
[1] Mrs. Prejean answered the appeal requesting an increase in general damages and that all court costs be cast against defendants. Because we conclude defendants are not liable to plaintiff, we pretermit the contentions raised in her answer.