# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 04-1237

PAMELA FERRERA STEPHENSON

VERSUS

COMMERCIAL TRAVELERS MUTUAL INSURANCE
COMPANY, ET AL.

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 03-C-1443-C
HONORABLE ALONZO HARRIS, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of John D. Saunders, Marc T. Amy, and Michael G. Sullivan, Judges.

**AFFIRMED.**

Troy Allen Broussard
Allen & Gooch
Post Office Drawer 3768
Lafayette, LA 70502-3768
(337) 291-1000
COUNSEL FOR DEFENDANTS/APPELLEES:
    Perry Fontenot
    Doug Guillory
    Opelousas Catholic School Board
    Opelousas Catholic School
    David Tuttle
    Catholic Mutual Relief Society of America

Felix Andy DeJean, IV
DeJean Law Office, L.L.C.
604 St. Ferdinand Street
Baton Rouge, LA 70802
(225) 344-2639
COUNSEL FOR PLAINTIFF/APPELLANT:
    Pamela Ferrera Stephenson

AMY, Judge.

The plaintiff appeals the trial court's dismissal of her claim for damages related to injuries sustained by her daughter in a school soccer match. The trial court granted the defendants a summary judgment, finding that no genuine issue of material fact existed with regard to legal cause. For the following reasons, we affirm.

**Factual and Procedural Background**

The plaintiff, Pamela Ferrara Stephenson, (hereinafter "Ms. Stephenson") brought the instant suit individually and on behalf of her minor daughter, Pamela Anne Ferrara (hereinafter "Pamela"), seeking damages related to injuries Pamela sustained while playing in an extracurricular school-sponsored soccer match.

Pamela stated in her deposition that she attended Opelousas Catholic School in January, 2003, and played as a "starting defender" on the school's soccer team. She stated that, due to a past sprain, she wore an ankle brace and tape on her right ankle when she played soccer. On January 11, 2003, Pamela "rolled" her left ankle while playing a home soccer game. She stated that the team's coach, David Tuttle, removed her from the game and commented that the injury "look[ed] pretty nasty." Ms. Stephenson stated in her deposition that she took Pamela to have the injury examined by Dr. Thomas Butaud. Pamela stated that Dr. Butaud told her that she had sprained her left ankle and would have to attend physical therapy, and that she must discontinue playing soccer until she saw him again. She stated that Dr. Butaud told her that, when she was cleared to return to soccer, she would now have to tape her left ankle as well, but that it would not require a brace.

Pamela traveled with the team to Alexandria for a game on January 14, although she did not play in the game due to her injury. She stated that she informed Mr. Tuttle that day that she would be attending physical therapy and would be unable to play in any games until she was released by Dr. Butaud. She stated that, "[t]o feel

[like] a part of the team[,]" she dressed in her uniform, although she did not wear her ankle brace and tape. The team also had a game on January 18, which Pamela again stated that she attended in uniform, but without her ankle brace or tape. She said that although she had not intended to play in that game, Mr. Tuttle sent her in to play for approximately five minutes toward the end of the game. She said that she "didn't know if [she] should go because of [her] ankle," but that she wanted to play, and did not bring her restrictions or injuries to Mr. Tuttle's attention.

On January 21, the team traveled to play against The Academy of Sacred Heart of Grand Coteau (hereinafter "ASH"); Pamela stated that, although she had not intended to play, she again dressed for the game in her full uniform. She said that, after arriving at the field, "Coach Tuttle asked me, he said, 'Are you going to be able to mark Sadie?'[1] And just – in my mind, wanting to play and knowing that that game was important, I was, like, 'Yes, I would love to play.'" She stated that she then had a teammate tape her ankles and started in the game. She said that her team had been playing "fairly well" and that she had "shut down" the opponents she was defending, until she was kicked in the right leg by an opposing player who was trying to take possession of the ball from her. Pamela suffered multiple fractures to her right leg as a result of the accident.

Ms. Stephenson brought this suit on April 4, 2003 against a number of defendants, including the school, its athletic director, principal, and the coach, as well as the school board. She claimed damages for Pamela's medical expenses and pain and suffering, as well as for her lost opportunity to obtain both academic[2] and athletic college scholarships. Ms. Stephenson also claimed mental anguish damages pursuant

---

[1] The plaintiff clarified in her petition that "to mark" means "to guard" in this sense, and Pamela stated in her deposition that "Sadie" was the name of a member of the opposing team.

[2] The plaintiff claims that, as a result of her injuries, Pamela was unable to attend school for an extended period and, despite her attempts to work from home, her grades fell "drastically."

2

to La.Civ.Code art. 2315.6.[3] The defendants requested a summary judgment, alleging that the plaintiff could not meet her burden of proof with respect to the legal cause element of the duty/risk analysis. The trial court granted the summary judgment, dismissing the matter and thereafter denied the plaintiff's motion for a new trial. The plaintiff appeals, alleging that the trial court "erred in granting a Motion For Summary [J]udgment predicated upon plaintiff's inability to show legal causation."

**Discussion**

Louisiana courts apply a duty-risk analysis to determine the existence of delictual liability. *Lazard v. Foti*, 02-2888 (La. 10/21/03), 859 So.2d 656; *Roberts v. Benoit*, 605 So.2d 1032 (La.1991). "Under this analysis the plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached." *Posecai v. Wal-Mart Stores, Inc.*, 99-1222, p. 4 (La. 11/30/99), 752 So.2d 762, 765. In order for a plaintiff to recover on a negligence theory, each of the preceding inquires must be answered affirmatively. *Id.*

In her memorandum opposing summary judgment, the plaintiff stated, "[b]ut for the defendant's action in putting Pamela Ferrera into a soccer game when she had not been released from her doctor to play soccer, Pamela Ferrera would not have broken her right leg." The plaintiff claimed that the defendants, and particularly Mr. Tuttle, in his capacity as a teacher and a coach, had a duty to exercise reasonable care and supervision over the students. The plaintiff alleged that the defendants breached that duty by putting Pamela into the soccer game with the knowledge that she had

---

[3] The plaintiff later amended her petition to include a claim for loss of consortium. The defendants raised the peremptory exception of prescription, arguing that the claim did not relate back to the date of the plaintiff's original petition. The trial court noted that, in granting a summary judgment, the prescription exception was rendered moot.

been injured the previous week and had not been released to play by her physician. The defendants suggested that, even if each of those assertions were accepted as true,[4] the plaintiff could not meet her burden of proving legal cause, or that the harm suffered fell within the scope of the duty. The defendants asserted that any duty the school may have had to keep Pamela from playing due to her sprained left ankle did not extend to protecting her from getting kicked in the right leg by an opposing player during the course of a game.

The trial court granted the summary judgment, stating in its written reasons for judgment:

> This Court opines that any player could have been injured on the soccer field in the manner in which the plaintiff was injured. Plaintiff's left leg injury has nothing to do with her right leg injury. This type of injury was unforeseeable to occur. It falls beyond the scope of protection that defendants owe to plaintiffs. [sic] Pamela Ferrara should not have dressed out in uniform on the day in question, since she knew that she was not supposed to play. Ferrara played in a previous game before the game in question. In that particular game, there was not a problem with her ankle.

> Once again, any other player could have gotten kicked in the leg during a soccer game where this type of injury can occur. Soccer is a game of kicking the ball and a lot of physical contact.

The trial court's decision to grant or deny a summary judgment is reviewed de novo, applying the same criteria used by the trial court. *La. Horsemen's Benevolent and Protective Ass'n v. Fair Grounds*, 02-1928 (La. 4/9/03), 845 So.2d 1039. Louisiana Code of Civil Procedure Article 966 provides for summary judgment as follows, in relevant part:

> A. (1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed.

---

[4] We note that the defendants clearly stated in their summary judgment motions, as well as on appeal, that their acceptance of certain assertions made by the plaintiff as true, i.e. the existence and/or breach of a duty by the defendants, was only for the purposes of the summary judgment determination.

The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.

(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.

. . . .

C. (1) After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted.

(2) The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

Because many of the facts in this case are uncontested, at least for the purposes of determining whether summary judgment is proper, our analysis centers on the legal cause issue. "Regardless if stated in terms of proximate cause, legal cause, or duty, the scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls within the scope of the duty." *Roberts*, 605 So.2d at 1044. In determining whether the harm sustained by the plaintiff fell within the scope of the duty owed by the defendant, we must determine whether the circumstances of the plaintiff's injury could have been reasonably foreseen or anticipated, due to an ease of association between the risk of that injury and the legal duty. *Lazard v. Foti*, 859 So.2d 656 (citing *Hill v. Lundin & Assoc.*, 256 So.2d 620 (La.1972)). The Louisiana Supreme Court summarized the legal cause analysis in *Faucheaux v. Terrebonne Consol. Gov't*, 615 So.2d 289, 294 (La.1993) (citations omitted), stating:

5

The scope of protection inquiry asks whether the enunciated rule extends to or is intended to protect this plaintiff from this type of harm arising in this manner. In determining the limitation to be placed on liability for defendant's substandard conduct, the proper inquiry is often how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced.

The defendants had a duty to act reasonably and to protect those students in their charge from foreseeable harm. *See Prejean v. E. Baton Rouge Parish Sch. Bd.*, 98-63 (La.App. 1 Cir. 2/19/99), 729 So.2d 686, *writ denied*, 99-801 (La. 4/30/99), 743 So.2d 209; *Herring v. Bossier Parish Sch. Bd.*, 25,540 (La.App. 2 Cir. 2/23/94), 632 So.2d 920. Clearly, a coach cannot be expected to ensure the safety of all players in all circumstances, but instead "[a] coach or teacher has the duty to those under his or her charge to recognize and exercise his or her specific responsibilities under the circumstances to protect them from foreseeable harm from the conduct of things or persons under that coach's or teacher's supervision." *Herring* at 921. In this case, the defendants have conceded, for the purposes of the summary judgment determination only, that they had a duty to keep Pamela from playing in the soccer match due to her left ankle sprain.

The legal cause question, then, becomes how easily the risk of Pamela being kicked in the right leg during a game can be associated with the defendants' duty to keep her from playing in that game due to her sprained left ankle. Due to Pamela's pre-existing injury, the plaintiff alleges in her appellate brief that "the defendants conduct was the legal cause of her injuries because the nature of her previous injuries made her present injury extremely foreseeable[,]" due to Pamela's decreased mobility and agility on the field.

We note that we are unable to find any evidence in the record to support the plaintiff's assertion that Pamela's left ankle sprain compromised her mobility or her agility, as the plaintiff alleges in her appellate brief. In fact, Pamela stated in her

6

deposition that she had been playing "very well" and had "shut down" "one of the best people on [the opposing] team." Although she stated that she did experience some pain in her ankles while playing, she also stated that she "knew how to deal" with the pain and did not tell the coach about the pain because she wanted to play in the game. We will nonetheless consider the plaintiff's contention.

Because the record does not contain testimony by Dr. Butaud, the treating physician in this case, we must assume the reasons that Pamela was told to discontinue her soccer activities pending her physical therapy. The types of risks associated with her playing with a sprained ankle would likely include either 1) injury to herself, or 2) injury to other players. It is foreseeable that Pamela could have suffered injury to herself due to her activity by slowing, stopping, or even reversing the healing process and further injuring her sprained left ankle. While there may be risks that could easily be associated with the defendants' duty to keep Pamela from playing, the common thread for those risks is that Pamela's sprained ankle would be either the cause or (an exacerbation thereof would be) the result of the accident.

Pamela provided her account of the accident that caused her injury in her deposition as follows:

> A[.] I had possession of the ball and I was going in toward mid field, and Sadie [opposing player] comes running, like, full speed at me and instead of drop – the ball was in front of me, and instead of drop-kicking the ball, she drop-kicked my leg, and it just bowed out and –
>
> . . . .
>
> Q[.] Now, before the accident happened, just tell me how the game was going in general?
>
> A[.] We were doing fairly well. The girls – ASH scored a point or so on us just by our own mistakes and then Molly and Jill scored some fair goals that we deserved. And I was marking Sadie and sometimes marking Cameron, because those are the two girls that are fairly – really good on their team. And I was doing my job, I shut down Sadie, because Sadie and Cameron work together to make all the goals, and if

7

that wasn't done, then they would have had a lot more goals on us than what they did have.

. . . .

Q[.] . . . When your leg – the break that you had on your leg, was it from falling to the ground after she kicked you, or was it from the kick itself?

A[.] From the kick itself, because as soon as she kicked, you can – I could hear it, like, throughout my body just cracking.

Q[.] . . . Do you think your left ankle injury had anything at all to do with your right leg getting broken when Sadie kicked you?

. . . .

A[.] I mean, I'm not sure if it had anything to do with it, but it's just the impact itself of her kicking was – I mean, if she kicked anything like that, it would break –

Q[.] Okay.

A[.] – because she was running at a full sprint and just drop-kicked and kicked my leg.

Pamela's depiction of the accident does not reference her sprained left ankle at all, and, in fact, she stated that she was "not sure" that the pre-existing injury had any bearing on her broken right leg. It is evident from Pamela's own description of the manner in which she sustained her injury that the opposing player's kick was an aggressive attempt to perform a maneuver to either steal the ball from Pamela or simply kick it out of Pamela's possession. Unfortunately, the maneuver was not successful and Pamela was injured. However, we do not find that any duty the defendants may have had in this circumstance encompasses the risk of this type of injury — a broken right leg due to an unsuccessful ball-handling maneuver by an opposing player.

On appeal, the plaintiff also asserts that legal cause remains a genuine issue of material fact for trial because Pamela's injured ankle was improperly braced to sustain the impact that occurred. An adverse party to a supported motion for

8

summary judgment "may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided [by law], must set forth specific facts showing that there is a genuine issue for trial." La.Code Civ.P. art. 967(B). Although Pamela stated that a teammate wrapped her ankle in tape prior to the game, the record does not indicate the manner in which the ankle was taped. Pamela stated that the team's former soccer coach had taught the teammate "how to tape my ankle and her ankle because we have bad ankles." Our review of the record does not indicate any evidence to suggest that Pamela's ankle was actually "improperly braced."

The plaintiff also asserts on appeal that "under La.C.C.P. Art. 967, this case is not ripe for summary judgment because the deposition of Dr. Butuad [sic] has yet to be taken." The plaintiff alleges that she would have the doctor testify regarding the effect of improper bracing to cause or worsen an injury on impact. The defendants stated in their post (summary judgment) hearing memorandum that the plaintiff scheduled a deposition of Dr. Butaud for November 5, 2003,[5] but that the plaintiff had cancelled the deposition and never rescheduled it.

The parties must be given a fair opportunity to perform discovery and present their claim; however, they do not have an absolute right to delay summary judgment proceedings until discovery is complete. *Townley v. City of Iowa*, 97-493 (La.App. 3 Cir. 10/29/97), 702 So.2d 323. In this case, the record reflects that the plaintiff filed her petition on April 4, 2003; the trial court held the summary judgment hearing on March 26, 2004. The plaintiff had nearly a year from the date she filed suit to conduct discovery with regard to this witness. In view of that length of time, the

---

[5] The defendants included with the post-hearing memorandum a Notice of Deposition stating the same, which had been sent from the plaintiff to the defendants.

plaintiff had ample opportunity to gather the evidence necessary to support the allegations made in her petition.

Thus, we conclude that, because the plaintiff has failed to produce factual support sufficient to establish that she can prove the existence of legal cause at trial, there is no genuine issue of material fact as to that element. Consequently, this assignment has no merit.

## DECREE

For the foregoing reasons, the summary judgment entered in favor of the defendants is affirmed. All costs of this matter are assigned to the plaintiff, Pamela Ferrara Stephenson.

**AFFIRMED.**