Judgment rendered July 13, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,591-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| JAY SLACK AND KIMBERLY SLACK, ON BEHALF OF THE MINOR, C.S. | Plaintiffs-Appellants |

versus

| | |
|---|---|
| PATRICIA COPELAND, INDIVIDUALLY AND ON BEHALF OF THE MINOR, M.C. | Defendants-Appellees |

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 608,974-A

Honorable Ramon Lafitte, Judge

* * * * *

| | |
|---|---|
| GREGORIO, CHAFIN, JOHNSON, TABOR & FENASCI, LLC By: Scott J. Chafin, Jr. Julie P. Johnson Marshall O. Johnson | Counsel for Appellants |
| CASTEN & PEARCE, APLC By: Marshall R. Pearce Sarah E. Assad | Counsel for Appellees, Patricia Copeland, Minor, M.C., and State Farm Fire and Casualty Co. |
| COOK, YANCEY, KING & GALLOWAY, APLC By: Brian A. Homza | Counsel for Appellee, Evangel Christian Academy, Inc. |

* * * * *

Before COX, ROBINSON, and MARCOTTE, JJ.

**MARCOTTE, J**

This appeal arises from the First Judicial District Court, Caddo Parish, the Honorable Ramon Lafitte presiding. Plaintiffs appeal the trial court's ruling granting defendant Evangel Christian Academy, Inc.'s motion for summary judgment and dismissing plaintiffs' claims against it. For the following reasons, we affirm.

**FACTS**

The incident giving rise to this litigation occurred during a junior varsity football game held on October 2, 2017, when Evangel Christian Academy, Inc. ("Evangel"), played Airline High School ("Airline"). C.S., the son of plaintiffs Jay and Kimberly Slack, was a 16-year-old sophomore playing football for Airline, and M.C., defendant Patricia Copeland's son, was a 17-year-old junior who played for Evangel. The two players did not know each other and had not spoken to each other prior to the game.

During a particular play, C.S. blocked M.C., and M.C. allegedly responded by grabbing C.S.'s facemask. M.C. allegedly held onto C.S.'s facemask and began dragging him by the facemask. C.S., who may have lost his balance, then grabbed M.C.'s facemask and jerked his chin to his chest. At that point, M.C. and C.S. were purportedly each holding the other's facemask. Who grabbed whose facemask first, and whether M.C. grabbed C.S.'s facemask at all, are disputed issues of fact. M.C. allegedly then punched C.S. in the face, breaking his jaw in two places. C.S. underwent surgery and had his jaw wired shut for approximately one month.

On May 22, 2018, plaintiffs, the Slacks, filed a petition for damages on C.S.'s behalf against Copeland. The Slacks later filed a supplemental and amending petition adding Evangel as a defendant. The Slacks stated that

Evangel had a duty to provide reasonable supervision of its students, including its football players, and it negligently failed to do so in this case. The Slacks also claimed that Evangel negligently allowed M.C. to play football when he should not have been allowed to do so, and the school committed "other acts of negligence" to be shown at trial. Evangel answered the petition denying the allegations.

On January 8, 2020, Evangel filed a motion for summary judgment, asking the trial court to dismiss the Slacks' claims against it. Evangel argued that the Slacks cannot prove: 1) it was negligent in supervising M.C.; 2) that C.S.'s injury was foreseeable, rather than a spontaneous event; or 3) that it had constructive or actual knowledge that such an injury was possible. Evangel contended that constant supervision in the situation that gave rise to the litigation was impossible and that Evangel's coaches watched its players throughout the game. Evangel stated its coaches taught the players to not react as M.C. did, by throwing a punch. Evangel argued that M.C. did not have a propensity for violence, and it had no reason to suspect he would be involved in this type of incident. Evangel cited *Wallmuth v. Rapides Parish Sch. Bd.*, 01-1779 (La. 4/3/02), 813 So. 2d 341, as supporting its assertion that schools cannot be held liable for negligent supervision arising from fights between students.

The Slacks opposed Evangel's motion for summary judgment. The Slacks cited La. C.C. art. 2320[1] and stated that M.C. gave deposition

---

[1] La. C.C. art. 2320 provides in part:

Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.

testimony that he did not know how to react to C.S. grabbing his facemask, because Evangel's coaches did not instruct him on how to respond in that specific situation. The Slacks contend that this reveals a genuine issue of material fact as to whether Evangel breached its duty to provide M.C. with adequate instruction and training. The Slacks stated that C.S.'s injury was foreseeable, because football is an "aggressive and confrontational sport." The Slacks argued that Evangel had a legal duty to provide players with instruction and training, and there is a genuine issue of material fact whether Evangel breached that duty. The Slacks contended that the applicable standard is supplied by jurisprudence regarding sports.[2]

The Slacks filed a supplemental memorandum in opposition to Evangel's motion for summary judgment. In a supplemental filing, the Slacks stated that they had received M.C.'s disciplinary record, which showed three prior infractions, one for "fighting," and two for "disrespect of a staff member," both of which the Slacks claimed were grounds for expulsion. The Slacks stated that one of Evangel's coaches, Coach D.J. Curry ("Coach Curry"), gave deposition testimony that Evangel has a duty to teach student athletes to refrain from "throwing punches." The Slacks argued that that testimony was in conflict with that of Evangel's former principal, Albert Dean ("Principal Dean"), who testified that student athletes

---

In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.

[2] In support of this statement, plaintiffs cite *Herring v. Bossier Parish Sch. Bd.*, 25,540 (La. App. 2 Cir. 2/23/94), 632 So. 2d 920; *James v. Jackson*, 04-0912 (La. App. 4 Cir. 3/2/05), 898 So. 2d 596, *writ denied*, 05-0867 (La. 5/13/05), 902 So. 2d 1005; *Scott v. Rapides Parish Sch. Bd.*, 98-1754 (La. App. 3 Cir. 4/7/99), 732 So. 2d 749, *writ denied*, 99-1371 (La. 7/2/99), 747 So. 2d 22; and *Green v. Orleans Parish Sch. Bd.*, 365 So. 2d 834 (La. App. 4 Cir. 1978), *writ denied*, 367 So. 2d 393 (La. 1979).

should have the self-discipline to refrain from fighting, which is the ideal, but not always practical.

Evangel filed a reply arguing that *Wallmuth v. Rapides Parish Sch. Bd.*, *supra*, is the more appropriate case for assessing the legal standard at issue. Evangel again argued that C.S.'s injuries were not foreseeable, and that Principal Dean' testimony and Coach Curry's testimony are not in conflict with each other.

The parties attached to their memoranda transcripts of the depositions of Coach Curry, Coach Byron Dawson, Principal Dean, C.S., and M.C. The parties also attached M.C.'s disciplinary record from Evangel and the Evangel student handbook.

On July 19, 2021, a hearing was held on Evangel's motion for summary judgment.[3] Following oral arguments, the trial court stated:

> [T]he court has been faced, especially recently, with a lot of cases dealing with school fights on the bus, in the cafeteria, everywhere. This is on a football field, a contact sport. Depositions of individuals indicate the students are taught not to react in such a manner. Just because you tell a child not to do something, doesn't mean he's going to listen and not do it.
>
> This, as you showed me in the video, this is a spontaneous reaction that I don't think the school could have done anything to prevent, if they're teaching their athletes not to respond by hitting back, because…the last person to take action is usually the one to get penalized. I did not take the words of Mr. Dean, in the video, to mean that he doesn't care or is not responsible for his students. I took it to mean that the school is not liable to those actions when they teach Christian values. They teach one thing, and the student responded another way in response to the spontaneous jerking of his helmet.
>
> All the cases I've read, didn't read every one that you all cited, but I read a few, a couple of them. I've read other cases dealing with other fights at school dealing with students, and I do

---

[3] A video may have been played during the hearing on the motion for summary judgment. It is unclear if the video is of the on-field incident between M.C. and C.S. and/or is of the video deposition of Principal Dean. No video was entered into the record.

4

believe that there is no genuine issue of fact. The school taught how to respond in such situations, as testified by the depositions that submitted, and were taught Christian values, as Mr. Dean just indicated in the video; therefore, the motion for summary judgment is granted.

On August 17, 2021, the trial court signed a written judgment granting Evangel's motion for summary judgment and dismissing with prejudice plaintiffs' claims against it. Plaintiffs now appeal.

## DISCUSSION

The Slacks argue that there remains a genuine issue of material fact about whether Evangel and its coaches breached their duty to furnish M.C. with sufficient instruction and training and that C.S.'s injuries were foreseeable as a consequence of that breach. The Slacks claim Evangel had a duty to instruct its football players regarding the proper performance and identification of risks so as to reduce the risk of foreseeable harm to players. The Slacks state that Coach Dawson testified that he had a responsibility to teach his players and to correct and punish them when they do not comply with that instruction. The Slacks point out that M.C. testified that Evangel's coaches did not instruct him on what he should do when his facemask is pulled, and he stated that he did not know what he should have done differently in that situation.

Finally, the Slacks maintain that the applicable jurisprudence is that regarding sports and not that regarding fights and spontaneous acts of violence that occur in a school setting. The Slacks state that the jurisprudence Evangel cited involved situations in which there was no inherently dangerous activity giving rise to a specific duty to instruct or train. The Slacks ask this Court to reverse the trial court's ruling and remand the case for further proceedings.

5

Evangel argues that its coaches and Principal Dean all testified as to the school's efforts to "instill discipline and core values of leadership" in their players. Evangel asserts that the Slacks are unable to show negligent supervision, because they must first show: 1) that there was a failure to adequately supervise the safety of the students; 2) proof of negligence in providing supervision; and 3) proof of a causal connection between the lack of supervision and the accident. Evangel states that it is not obligated to maintain constant surveillance of students, and it is responsible for delicts committed by students under its care only upon proof that its coaches could have prevented the act which caused the damage and did not do so.

Evangel asserts that M.C.'s punch was a spontaneous, intentional act that it could not have prevented. There was adequate supervision, because its coaches were on the sidelines of the field watching the players throughout the game. Evangel states that its coaches taught their players how to react in adverse situations and to not respond. Evangel argues the Slacks are unable to show that the injury suffered by C.S. was foreseeable, because it was unexpected that M.C. would throw a punch.

Evangel states that it did not have actual or constructive knowledge of the possible injury that M.C. suffered, and the Slacks' characterization of M.C. as a violent student that should have not been allowed on the field is unsupported by the record. Evangel states that M.C.'s disciplinary record shows an off-the-field fight with another student which occurred when he was in the seventh grade, and two infractions for "making noises in the classroom and horse playing with a fellow student," and neither infraction establishes a propensity for violence. Evangel states that prior to October 2, 2017, there were no instances of M.C. acting aggressively toward another

6

player on the field during a game. Evangel asks this Court to affirm the trial court's judgment.

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Larson v. XYZ Ins. Co.*, 16-0745 (La. 5/3/17), 226 So. 3d 412; *Jumper v. State Farm Mut. Auto. Ins. Co.*, 54,184 (La. App. 2 Cir. 3/9/22), 335 So. 3d 1001. The summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

A school, through its agents and teachers, owes a duty of reasonable supervision over students. La. C.C. art. 2320; *S.J. v. Lafayette Parish Sch. Bd.*, 09-2195 (La. 7/6/10), 41 So. 3d 1119; *Wallmuth v. Rapides Parish Sch.*

7

*Bd., supra*; *Boston v. Jackson Parish Sch. Bd.*, 50,988 (La. App. 2 Cir. 11/16/16), 210 So. 3d 399. The supervision compelled is reasonable, competent supervision appropriate to the age of the children and the attendant circumstances. *Id.* Constant supervision of all students is not possible, nor is it required, for educators to discharge their duty to provide adequate supervision. *Wallmuth v. Rapides Parish Sch. Bd., supra.* There must be proof of negligence in furnishing supervision and proof of a causal link between the insufficient supervision and the accident before liability can be levied upon a school for failure to sufficiently supervise the wellbeing of students. *Boston v. Jackson Parish Sch. Bd., supra.*

To impose such liability on the part of a school, the risk of unreasonable injury must be foreseeable, constructively or actually known, and preventable if a requisite degree of supervision had been exercised. *Id.* Generally, teachers are obliged to use only that supervision and discipline required of a reasonably prudent person under the circumstances at hand. *Id.*

In *Wallmuth v. Rapides Parish Sch. Bd.*, *supra*, the Wallmuths, parents of student J.W., filed suit against the Rapides Parish School Board and the parents of three students, N.S., D.Z., and C.D., for injuries J.W. sustained when N.S. and D.Z. held him down in a locker room, while C.D. kicked him in the knee, severely injuring him. The incident followed a volleyball game held during the students' physical education class. J.W. was on one team, and the other three students were on the other team. J.W.'s team was winning, which angered N.S., D.Z., and C.D. who said that they would "get [J.W.] after class." After the P.E. teacher dismissed the students to the locker room to change, the three students attacked J.W. *Id.*

8

J.W.'s locker was at the back of the locker room, and it could not be seen from the locker room door. The teacher was not in the locker room at the time of the incident, and J.W. testified at trial that the teacher was "hardly ever" in the locker room. He also said that "almost every day," "somebody [was] getting pushed or shoved into lockers, rolled around, thrown around…hair being pulled, arms twisted," and that usually the three students who attacked him were involved. He testified that when the teacher was in the locker room none of that behavior occurred. J.W. stated that he was the prior recipient of the students' bullying behavior, but he did not inform the teacher about those incidents. *Id*.

J.W stated that he did not tell the teacher about the threats made against him during the volleyball game. He testified that while N.S. and D.Z. held him down, C.D. was just standing there but "then he ran up and kicked me." N.S. and D.Z. confirmed that C.D.'s kicking J.W. was "sudden and surprising." The teacher came to the locker room 30-60 seconds after the attack. *Id.*

The school principal testified that he did not recall any specific incidents in the P.E. class and that he knew of no prior discipline problems concerning N.S., D.Z., or C.D. The discipline records showed that N.S. had been disciplined for an incident in the locker room, that D.Z. had been disciplined for violating gym rules and for disrespect of authorities, and that C.D. had prior discipline reports for fighting on three prior occasions. *Id.*

The P.E. teacher testified that he routinely walked through the gym and the locker room, after the class was dismissed to the locker room, in order to monitor the students. He testified that there had been five fights that year in the gym or locker area, none of which resulted in serious injury and

9

that he could not have done anything to prevent the incident without prior knowledge of the problem. *Id.*

The claims against the school board and its insurer were tried by a bench trial. The trial court found that the school board was 100% liable for J.W.'s injuries under La. C.C. art. 2315, finding that the P.E. teacher failed to supervise the students and this was a cause-in-fact of the injuries. The trial court refused to apportion fault to any of the students involved in the incident because of the extent to which it found the school board's behavior fell below the requisite standard of care, finding that the atmosphere of roughhousing and the lack of supervision invited the incident to occur. The court of appeal affirmed the judgment in part and reversed in part, finding that the school board was liable under La. C.C. art. 2320 for failing to adequately supervise the locker room.[4] The plaintiffs and the school board sought review with the Louisiana Supreme Court. *Wallmuth v. Rapides Parish Sch. Bd.*, *supra.*

The supreme court found that the conduct by C.D. was unforeseeable, as there had been no prior history of violence between J.W. and the other three students, and J.W. testified that he believed the other three students had cooled off after their threats of harm during the volleyball game. J.W. stated that he felt that he was in no danger of harm when he entered the locker room to begin changing clothes and therefore, did not notify the P.E. teacher that the students posed a danger to him. The court pointed out that D.Z. and N.S. testified that they did not know C.D. was going to kick J.W. and that it

---

[4] The court of appeal found that the trial court committed legal error by failing to quantify the fault of the students who attacked J.W. After review, the court of appeal re-apportioned the fault between the attacking students and the school board.

10

"happened suddenly and without warning." The court said that, because the incident was unforeseeable by J.W. or any of the other students involved, it could not have been foreseeable by the P.E. teacher. *Id.*

The supreme court found that the lower courts were clearly wrong in finding any independent liability on the part of the school board under either La. C.C. art. 2315 or 2320. The court found that the school board and school were unaware of any "pattern of rough housing" in the locker room, because the only notification they received regarding "rough housing" in the locker room was from a parent of one student who was not even in the same P.E. class as J.W. and which did not involve any of the students involved in the litigation. The court found that no independent fault was attributable to the school board. *Wallmuth v. Rapides Parish Sch. Bd., supra.*

The court also found that, because of the spontaneous nature and unforeseeability of C.D.'s actions, neither the school board nor the P.E. teacher could have foreseen the incident, nor have prevented it, exercising a reasonable degree of supervision. The court concluded that the school board was also not vicariously liable for the actions of C.D. under La. C.C. art. 2320. *Wallmuth v. Rapides Parish Sch. Bd., supra.*

Likewise, in *Williams v. Smith*, 45,069 (La. App. 2 Cir. 5/28/10), 37 So. 3d 1133, *writ denied*, 10-1530 (La. 10/1/10), 45 So. 3d 1103, this Court found that the school board was not liable for injuries a student sustained due to a spontaneous fight which occurred in the school cafeteria, where there were teachers present in the cafeteria at the time. This Court concluded that the fight was not foreseeable or preventable by reasonable supervision.

11

Plaintiffs cite cases in which students were injured during sports activities, stating that the jurisprudence regarding sports provides the particular duty of the school to adequately instruct its students in how to engage in a sport with due care. Plaintiffs cited *Scott v. Rapides Parish Sch. Board, supra*, in which the court of appeal found that the school board breached its duty to the student-plaintiff who was injured while making a long jump during P.E. class. The court stated that the coach did not provide adequate and proper instruction regarding the performance necessary to successfully and safely complete a long jump under maximum effort conditions.

Plaintiffs also cited *Herring v. Bossier Parish Sch. Bd., supra*, in which this Court found that a baseball coach's rules and procedures met with the prudent practice procedures used by coaches of young baseball players. This Court determined that the coach did not violate or breach those rules and procedures when a student-athlete, Herring, was struck and injured by a baseball during practice. This Court cited language similar to that in *Wallmuth v. Rapides Parish Sch. Bd, supra*, in providing the applicable standard of care in that case, saying:

> A coach or teacher has the duty to those under his or her charge to recognize and exercise his or her specific responsibilities under the circumstances to protect them from foreseeable harm from the conduct of things or persons under that coach's or teacher's supervision. A teacher or coach, however, is not the insurer of the safety of students in all circumstances and is not held to the impossible standard of exercising constant supervision over each student involved in a group activity.

632 So. 2d at 921.

This Court went on to conclude:

> Herring did not heed the coach's warning that the batter was "hitting." He did not keep his eye on the ball or watch either

12

> the batter or the coach as the coach began the "pitch" motion with the ball that struck Herring. Herring did not assume a defensive posture when leaving the safe area behind the screen, but instead focused upon and attempted to pick up or shag a ball that was in his path when the batter had not completed hitting practice.

*Id.* at 922.

Here, plaintiffs have failed to show how M.C.'s punching C.S. in the jaw after C.S. grabbed his facemask was a foreseeable event that Evangel or its coaches could have prevented. It was a spontaneous reaction to a penalty, by a high school junior, that Evangel's coaches could not have prevented. Evangel's coaches and Principal Dean gave deposition testimony that they taught students self-discipline and to not retaliate when provoked in such a manner. The coaches specifically stated that they told their players not to fight back, because it was usually the last person to do so that was penalized.

M.C.'s testimony that he did not know what else to do to get C.S. "off of me" and that the Evangel coaches "only taught holding" and "never said anything about a facemask," does not create a genuine issue of material fact. When asked if he thought punching another player for a facemask infraction was an acceptable response, M.C. stated, "I could have [done] something different. But in the heat of the moment, that's what I did." This clearly shows that M.C punching C.S. was a spontaneous act.

Plaintiffs' argument that M.C.'s conduct was foreseeable due to his disciplinary record is also without merit. Plaintiffs' attempts to paint M.C. as an individual with a propensity for violence due to prior incidents at school is unfounded. M.C.'s previous disciplinary infractions amounted to horseplay and typical student misbehavior that many students engage in at school, for which they are disciplined. Furthermore, as Principal Dean

13

testified, Evangel appropriately disciplined M.C. in each instance of inappropriate behavior.

Plaintiffs' contention that the Evangel coaches should have taught its players how to respond specifically to a facemask penalty is not supported by the jurisprudence. Evangel and its coaches are required to provide reasonable, competent supervision appropriate to the age of its students and the attendant circumstances. Evangel's coaches and Principal Dean testified that they tried to instill in their players principles of leadership, self-discipline, and self-restraint. This case involves a 17-year-old student-athlete who was instructed not to retaliate to other players' penalties during football games, but "in the heat of the moment" chose to act in a way that was contrary to what he was taught in school.

Plaintiffs have failed to state what more Evangel could have done to prevent M.C. hitting C.S. The coaches were on the sidelines watching the game when M.C. hit C.S. The coaches cannot be on the field during play. This was a spontaneous event that the school could not have prevented. The trial court's ruling granting Evangel's motion for summary judgment was correct, and the ruling is affirmed.

## CONCLUSION

For the foregoing reasons, the trial court's ruling granting summary judgment in favor of defendant, Evangel Christian Academy, Inc., and dismissing with prejudice the claims of plaintiffs against it is affirmed. The costs of the appeal are assessed to appellants.

**AFFIRMED.**

14